**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Ross McCALEB and Brenda Page, Defendants-Appellants.**

Nos. 76–2060, 76–2061.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 15, 1976.

Decided April 11, 1977.

Rehearing and Rehearing En Banc Denied June 2, 1977.

Martin S. Baum, Detroit, Mich. (Court appointed–CJA), for defendant-appellant in No. 76–2060.

Renee S. Siegan, F. Randall Karfonta, Detroit, Mich., for defendant-appellant in No. 76–2061.

Philip Van Dam, U. S. Atty., Christopher A. Andreoff, Detroit, Mich., for plaintiff-appellee.

Before WEICK, PECK and ENGEL, Circuit Judges.

PECK, Circuit Judge.

These defendants appeal their convictions for possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). McCaleb was first found guilty by a judge sitting without a jury. Page was convicted after a jury trial. Prior to the trials, the district judge conducted an evidentiary hearing on the defendants' motions to suppress the evidence and a separate evidentiary hearing in order to develop more fully the facts underlying the Drug Enforcement Administration's (DEA) efforts to curtail narcotics traffic at the Detroit Metropolitan Airport, since these efforts were highly relevant to defendants' motions to suppress.

The facts disclosed at those hearings and the subsequent trials are as follows: On October 28, 1975, DEA agents observed two men and one woman, later identified as appellant McCaleb, one Larry Burnell White (his motion for directed verdict of acquittal was granted at trial), and appellant Page, arriving at the Detroit Airport on an American Airlines non-stop flight from Los Angeles. Page was carrying a shoulder bag, the others carried no luggage. The DEA agents testified that they recalled seeing Page and one of the men board the plane for Los Angeles the evening before, wearing the same clothes. The agents followed the three to the baggage claim area, observing that the trio did not converse and that Page and McCaleb appeared nervous, while White did not. McCaleb claimed one bag. As the three proceeded to the parking lot, they were stopped by the agents, who identified themselves and asked them their names and for some identification. All three detainees produced driver's licenses corresponding to the names given, McCaleb, White and Page. Agents then observed McCaleb's bag was tagged with the name D. Robertson and asked to see their flight coupons. McCaleb produced three tickets which showed the names Mr. and Mrs. Robertson and Mr. Johnson. Upon questioning by one of the agents, Page said she was not married and had been in Los Angeles for one week.

The three persons were then escorted to a small office in the airport by three DEA agents and were advised of their *Miranda* rights. McCaleb admitted that the suitcase was his and Agent Markonni told McCaleb he wanted to search the bag with McCaleb's consent, and that if McCaleb refused consent, the three would be detained while he (Markonni) secured a search warrant. McCaleb hesitated, then asked Page for the key, which he took and unlocked the suitcase. Agent Markonni then opened the suitcase and seized what looked like and later proved to be heroin and three flight coupons in the names of Mr. and Mrs. F. Washington and J. Smith for the evening flight to Los Angeles the preceding day. After this search and seizure, Page, McCaleb and White were advised that they were under arrest.

At the conclusion of the evidentiary hearings, the district judge determined that: (1) the DEA's use of a so-called "drug courier profile" does not, without "more indicia of criminal activity" constitute probable cause to arrest; (2) the fact that appellants met certain aspects of the "courier profile" gave rise to a "founded suspicion" and a valid investigative stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3) appellants gave a valid, voluntary consent to search.[1]

The "drug courier profile" is a rather loosely formulated list of characteristics used by Detroit DEA agents to indicate "suspicious" persons. These characteristics include: (1) the use of small denomination currency for ticket purchases; (2) travel to

---

1. The motions to suppress of two other defendants, William Van Lewis and Paula Hughes, were also dealt with in this opinion filed by the district court judge following the evidentiary hearings. *United States v. Van Lewis,* 409 F.Supp. 535 (E.D.Mich.1976).

and from major drug import centers, especially for short periods of time; (3) the absence of luggage or use of empty suitcases; (4) nervousness, and; (5) use of an alias. DEA agents testified that the presence of a number of these characteristics suggests that the person observed may be carrying contraband drugs. During the time period of the instant arrests, this profile was not written down, nor was it made clear to agents exactly how many or what combination of the characteristics needed to be present in order to justify an investigative stop or an arrest.

■ In this case, DEA agents observed three persons, two of whom were nervous, returning on a non-stop flight from Los Angeles after a short trip, and having only one suitcase among them. The government contended in the district court that these profile characteristics gave the DEA agents probable cause to arrest appellants or at least "reasonable suspicion" sufficient to justify a *Terry* stop. Police officers have probable cause to make an arrest when "at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [a person] has committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Prince,* 548 F.2d 164 (6th Cir. 1977). We agree with the conclusion of the district judge that the "drug courier profile," by itself, provides no probable cause to arrest an individual. In addition, while a set of facts may arise in which the existence of certain profile characteristics constitutes reasonable suspicion, the circumstances of this case do not provide "specific and articuable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the intrusion of an investigatory stop. *Terry v. Ohio, supra,* 392 U.S. at 21, 88 S.Ct. at 1880; *United States v. Cupps,* 503 F.2d 277, 281 (6th Cir. 1974). "Founded suspicion requires some reasonable ground for singling out the person stopped as one who was involved or is about to be involved in criminal activity." *United States v. Carri-*

zoza-Gaxiola, 523 F.2d 239, 241 (9th Cir. 1975). The activities of the appellants in this case observed by DEA agents, were consistent with innocent behaviour.

■ Even if we were to find the initial stop of appellants to have been justified, the following detention of appellants clearly went beyond the scope of *Terry,* which justifies only a very limited detention "reasonably related in scope to the justification for [its] initiation." *U. S. v. Brignoni-Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) citing *Terry, supra,* 392 U.S. at 29, 88 S.Ct. 1868; and *see United States v. Hunter and Allen,* 550 F.2d 1066 (6th Cir. 1977). Appellants were not free to leave at any point after the initial stop by the agents. As this court stated in *Manning v. Jarnigan,* 501 F.2d 408 (6th Cir. 1974), "[t]he difference between an investigatory stop and an arrest has yet to be spelled out. . . . [However], this was clearly a deprivation of liberty under the authority of law. It does not take formal words of arrest or booking at a police station to complete an arrest." 501 F.2d at 410. When appellants were taken to the private office and were not free to leave, the arrest was clearly complete. *See, United States v. Jackson,* 533 F.2d 314 (6th Cir. 1976).

■ The question thus remains whether following an invalid *Terry* stop and an unconstitutional arrest of appellants, evidence was properly seized as the result of a valid consent search. "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) citing *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797. The question of voluntariness of a consent is "a question of fact to be determined from the totality of all the circumstances," *Schneckloth v. Bustamonte, supra,* 412 U.S. at 227, 93 S.Ct. at 2048, and as such requires this court to hold the district judge's finding of

voluntary consent to be clearly erroneous before it can be overruled. *United States v. Hearn,* 496 F.2d 236, 242 (6th Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974).

Consent "must be proved by 'clear and positive testimony,' *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), and 'must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion,' *Simmons v. Bomar,* 349 F.2d 365 (6th Cir. 1965)." *United States v. Hearn, supra,* 496 F.2d at 244. "[T]he mere fact that a person has been arrested in violation of his constitutional rights casts grave doubt upon the voluntariness of a subsequent consent. The Government has a heavy burden of proof in establishing that the consent was the voluntary act of the arrestee and that it was not the fruit of the illegal arrest." *United States v. Bazinet,* 462 F.2d 982, 989–90 (8th Cir.), *cert denied,* 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972); *see also, Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Manning v. Jarnigan, supra,* 501 F.2d at 411–412.[2]

■ The fact that appellants were read their *Miranda* rights does not in and of itself show the voluntariness of the subsequent consent, for "[i]f *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted." *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Other factors which the district court held tended to show a voluntary consent are that appellants are of average education and intelligence; had not been formally detained nor subjected to prolonged questioning or any physical punishment, and; McCaleb's act of unlocking the suitcase. Factors tending to militate against a finding of voluntariness include an unconstitutional stop; an unconstitutional arrest; the detention of appel-

lants in unfamiliar surroundings by three agents; the statement to McCaleb by agent Markonni that he either consent to the search or remain in detention, with his companions while a warrant was sought; the fact McCaleb did no more than unlock the bag, as distinguished from the defendant in *Schneckloth,* who opened the trunk of his car for the officers, and; the fact that no oral acquiescence or written consent was given by McCaleb. This court concludes that such consent as was here involved was not shown by the government to have been "freely and voluntarily" given and that therefore, the conclusion of the district court to the contrary was clearly erroneous. *See, United States v. Hearn,* 496 F.2d 236 at 244.

Having concluded the above, we need not reach the additional question of trial error raised by appellant Page.

The judgment of the district court is reversed.

---

2. This situation is distinguishable from that in *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) in which the Supreme Court held valid a consent to search given while the defendant was in custody after a lawful arrest.