**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Van LEWIS,**
**Defendant-Appellant.**

**No. 76–2125.**

United States Court of Appeals,
Sixth Circuit.

June 6, 1977.

Rehearing Denied Aug. 5, 1977.

---

Elliott S. Hall, Hall & Andary, S. Allen Early, Jr., Detroit, Mich., for defendant-appellant.

Philip M. Van Dam, U.S. Atty., Robert D. Sharp, Pamela Thompson, Detroit, Mich., for plaintiff-appellee.

Before WEICK, PECK and ENGEL, Circuit Judges.

PECK, Circuit Judge.

Defendant-appellant William Van Lewis was found guilty by a jury of having knowingly and unlawfully possessed the Schedule I controlled substance heroin in violation of 21 U.S.C. § 841(a)(1).[1] Appellant was sentenced to serve a term of 18 months in prison. Appellant now appeals his conviction on the ground that the district court

---

1. 21 U.S.C. § 841(a)(1):

(a) Except as authorized by this subchapter it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance
. . . .

erred when it denied his pretrial motions to suppress the evidence of heroin seized by agents of the Drug Enforcement Administration (DEA) in the course of a search at the Detroit Metropolitan Airport and then admitted the heroin into evidence at trial.[2] We affirm the appellant's conviction.

The facts of the case were developed in pretrial evidentiary hearings on motions to suppress evidence and at trial. On the morning of July 8, 1975, Mrs. Susan Le-Blanc, a ticket agent for American Airlines at the Detroit Metropolitan Airport, informed DEA Special Agent Paul Markonni that a suspicious person by the name of "J. Hall" had just purchased a first class ticket on a flight to Los Angeles, California, with currency of small denominations. Mrs. Le-Blanc gave Agent Markonni a description of "J. Hall" and said that "J. Hall" had initially requested a one way ticket to Los Angeles but then stated that he wanted a round trip ticket because if everything went all right he would be coming back later that evening. Mrs. LeBlanc added that "J. Hall" had checked a small suitcase that appeared to be empty except for one small item which slid around inside the suitcase.

"J. Hall" appeared suspicious to Mrs. Le-Blanc because he fit a "drug courier profile" that DEA agents have used at the Detroit Metropolitan Airport to indicate persons likely to be carrying drugs. The characteristics listed on the profile include: (1) the use of small denomination currency for ticket purchases; (2) travel to and from major drug import centers, especially for short periods of time; (3) the absence of luggage or use of empty suitcases; (4) nervousness; and (5) use of an alias. *See United States v. McCaleb [,Page],* 552 F.2d 717 (6th Cir. 1977).

Agent Markonni sought to check the reservation made by "J. Hall." Markonni found that it had been made earlier that week by telephone and that a telephone number had been provided as a contact. Markonni checked the telephone number and found it to be listed to William Van Lewis (the appellant), 7248 Rutland, Apt. 305, Detroit. The agent went to the apartment and identified himself to the apartment manager, who spontaneously suggested that the agent must be there to inquire about William Van Lewis in Apt. 305. Markonni asked why he thought so, and the manager said that the Detroit Police Department had the apartment under surveillance for alleged narcotics traffic. The description of William Van Lewis given by the apartment manager matched that of "J. Hall" given by Mrs. LeBlanc, the American Airlines ticket agent. The apartment manager also informed Markonni that he believed that appellant lived somewhere other than in the apartment, and he provided Markonni with a description of appellant's car and the license plate number.

Agent Markonni discovered that the license plate number was registered to appellant at 18463 Edinborough, Detroit. A check was then made with the Detroit Police Department, which informed Markonni that appellant had been arrested in February, 1973, for possession of heroin, and that he had previously been convicted for attempted unlawful use of an automobile and for uttering and publishing. The description of appellant in Detroit police files matched that of "J. Hall."

Markonni left word with American Airlines to alert him when "Hall" was scheduled to return. At 4:00 a. m., on July 9, 1975, Markonni was informed by an American Airlines employee that "Hall" was returning on a flight from Los Angeles early that morning.

---

**2.** On December 1, 1975, appellant filed his first motion to suppress evidence, but his motion was denied on December 18, 1975. Appellant proceeded to trial on December 22, 1975. A mistrial was declared when the jury could not agree. On January 13, 1976, appellant filed another, expanded motion to suppress evidence. After an evidentiary hearing that consolidated three cases, *United States v. Van Lewis,* Criminal Action No. 5–8118, *United States v. Hughes,* Criminal Action No. 5–8172, and *United States v. McCaleb, White and Page,* Criminal Action No. 5–8185, appellant's motion was again denied in a published opinion. *United States v. Van Lewis et al.,* 409 F.Supp. 535 (E.D.Mich.1976). Appellant proceeded to trial again on March 16, 1976, and was found guilty as charged by the jury.

Agent Markonni and DEA Special Agent Thomas Dykstra went to the airport. There they saw appellant deplane and go to the baggage claim area. Appellant was wearing the same blue denim leisure suit that he had worn to California the day before. Because all the passengers but appellant received their luggage, appellant had to go to the American Airlines baggage office to claim his suitcase. While he waited for his suitcase, Agent Markonni and Agent Dykstra kept watching appellant, and according to the agents, he appeared nervous.

As soon as appellant received his suitcase and began to leave the airport terminal, the two DEA agents, believing that they had probable cause to arrest, approached appellant, informed him that they believed he was in possession of narcotics, and requested him to accompany them to a small office in the airport terminal. In the office, appellant identified himself as William Van Lewis. Appellant was given *Miranda* warnings. When asked if his suitcase was locked, appellant, without verbal response, either set the combination of the suitcase so that it could be opened or simply handed the already unlocked suitcase to Agent Markonni. The suitcase was then opened by Agent Markonni. Only a shaving kit and one piece of clothing were found inside the suitcase. The DEA agents opened the shaving kit and found the heroin.

The district court agreed with the United States that there was probable cause to arrest appellant when he claimed his baggage at the airport and that the search of appellant's suitcase was valid as a search incident to an arrest.[3] The district court considered the DEA use of the "drug courier profile" and determined that the fact that a person possessed characteristics fitting the profile did not, without more indicia of criminal activity, provide DEA agents with probable cause to arrest. Nevertheless, the district court held that in appellant's case, the combination of the fact

appellant fit the DEA "drug courier profile" with additional information indicating that appellant was involved in narcotics traffic supplied the probable cause necessary to arrest legally the appellant.

On appeal, appellant contends that there was not probable cause to arrest him and that the evidence of heroin should therefore have been suppressed. Appellant especially attacks the use by the district court of the "drug courier profile" as an improper element to be considered in a determination of probable cause. The issue is thus whether there was probable cause to arrest appellant at the time he was escorted to the airport office, which would have made a warrantless search incident to a valid arrest permissible. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962); *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); *Manning v. Jarnigan,* 501 F.2d 408 (6th Cir. 1974).

■ The Supreme Court in *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), stated that the constitutionality of an arrest depends upon "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." 379 U.S. at 91, 85 S.Ct. at 225. The determination as to whether there was probable cause to arrest is "an act of judgment formed in light of the particular situation and with account taken of all the circumstances." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). That judgment is guided by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

---

**3.** The district court also held that appellant had consented to the search under *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *United States v. Van*

*Lewis et al., supra.* We do not reach that issue because of our disposition of the case on the issue of a lawful warrantless search incident to a valid arrest.

*Brinegar v. United States, supra,* 338 U.S. at 175, 69 S.Ct. at 1310. The rule of probable cause thus rests upon a common sense approach that accommodates the need for effective law enforcement and the need to insulate law-abiding citizens from official capriciousness. *Beck v. Ohio, supra,* 379 U.S. at 91, 85 S.Ct. 223; *Brinegar v. United States, supra,* 338 U.S. at 176, 69 S.Ct. 1302. *See United States v. Hunter (and Allen),* 550 F.2d 1066 (6th Cir. 1977); *United States v. Prince,* 548 F.2d 164 (1977); *United States v. Upthegrove et al.,* 504 F.2d 682 (6th Cir. 1974).

■ In appellant's case, the fact that appellant fit the "drug courier profile" is not a relevant factor in determining whether there was probable cause to arrest. In *United States v. McCaleb [,Page], supra,* 552 F.2d at 720, we stated that we agreed with the district court judge that the "drug courier profile," by itself, could not provide the probable cause necessary to justify legally the arrest of an individual. We also stated that in the context of *McCaleb,* the "drug courier profile" could not even provide the founded suspicion to justify an investigative stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Even assuming that an adequate profile could be drawn, under the rule laid down by the district court, in making his probable cause determination, the officer would still be faced with the extremely difficult problem of determining whether a person fit the profile and the even more formidable responsibility of deciding whether there was sufficient additional information.

■ Such a probable cause inquiry would be inappropriate for two reasons. First, the profile is too amorphous to be integrated into a legal standard. When appellant was arrested, "this profile was not written down, nor was it made clear to agents exactly how many or what combination of the characteristics needed to be present in order to justify an investigative stop or an arrest." *United States v. McCaleb [,Page], supra,* 552 F.2d at 720. Second, using the profile to determine probable cause would

engage this Court in an improper analysis. The proper analytical approach, adopted in *United States v. Barnett,* 407 F.2d 1114, 1118 (6th Cir. 1969), and reaffirmed in *United States v. Prince, supra,* 548 F.2d at 166, was set down by then Circuit Judge Burger in *Smith v. United States,* 123 U.S.App.D.C. 202, 358 F.2d 833, 837 (1966), *cert. denied,* 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967).

> "[P]robable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated' total."

If the "drug courier profile" were a major factor in resolving an issue of probable cause, we would be weighing individual layers of information, instead of evaluating the sum total and synthesis of information. In addition, use of the profile could too easily result in giving an undeserved significance to certain facts and distort the appraisal of the sum total of facts.

■ Of course, the inability to use the "drug courier profile" to justify the arrest of appellant does not preclude arriving at the conclusion that there were facts known to the DEA agents amounting to probable cause; nor does the inability to use the "drug courier profile" in determining probable cause preclude consideration of facts listed as characteristics in the profile. The question is, as stated in *Smith v. United States, supra,* 358 F.2d at 837, what collectively do the facts show?

■ What Agent Markonni knew for the purposes of probable cause was that appellant had taken a short trip, lasting less than one day, to Los Angeles, a distant city from which federally controlled narcotics had been illegally coming into Detroit; that appellant had used an alias when paying for his ticket, which indicated the likelihood of an illicit purpose in the trip; that appellant had taken with him to Los Angeles one suitcase that was virtually empty; that appellant had a prior arrest for possession of heroin and had two non-drug related convictions; that appellant had left with

American Airlines a telephone number to an apartment which was noticeably under surveillance for narcotics traffic; that appellant's personal residence was a place other than the apartment under surveillance for narcotics traffic, which supported the inference that the apartment under surveillance was a place used by appellant for narcotics traffic; and that appellant had returned to Detroit wearing the same clothes as when he had left.

While these facts could be interpreted in such a way as to provide an innocent explanation for appellant's behavior, Agent Markonni, as a prudent man, could reasonably conclude from all the facts put together that appellant had gone to Los Angeles to obtain narcotics. To permit an arrest under the attendant circumstances would establish no precedent to subject citizens to the caprice of police officers. We conclude that Agent Markonni had compiled enough information so that not to uphold his arrest of appellant would unduly hamper law enforcement.

A case similar to the present one was United States v. Prince, supra, 548 F.2d 164. There the same DEA Agent Markonni discovered that the defendant Prince had taken a short trip to Los Angeles with a suitcase filled with money (although under his real name); that Prince had left with American Airlines a telephone number of a Holiday Inn known for drug traffic; that Prince had stayed in the suspect motel the day prior to leaving for Los Angeles; that the place of employment which Prince had given to American Airlines was non-existent; that Prince had a police record which included one drug related felony conviction; and that there was expected to arrive in Detroit a quantity of heroin at the time that Prince happened to return to Detroit. This Court held that these facts collectively, considered under the approach stated in Smith v. United States, supra, 358 F.2d at 837, constituted probable cause to arrest Prince and thus the heroin found in Prince's possession was a result of a lawful warrantless search incident to a valid arrest. United States v. Prince, supra, 548 F.2d at 166.

United States v. Prince, supra, 548 F.2d 164, cannot be distinguished from the present case on the ground that in Prince there was an informant's tip which permitted the arrest of Prince. This Court in Prince noted that the tip did not meet the requirements of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), because the tip was not a reliable informant's tip and was in no way corroborated. The tip was simply one more piece of information that, put together with the other facts, permitted a determination of probable cause. Moreover, the absence of such an informant's tip in the present case does not make weaker our conclusion of probable cause. Certain other facts that Agent Markonni knew in the present case created a much stronger link between appellant and illegal narcotics traffic than those in Prince. Prince was connected to a motel with a reputation for drug traffic. Appellant was connected to a private apartment under surveillance for drug traffic.

This decision is in harmony with the treatment of probable cause in United States v. McCaleb [,Page], supra, 552 F.2d 717. In McCaleb, this Court decided that the initial encounter between DEA agents and the defendants McCaleb and Page was an unconstitutional investigative stop not justified by Terry v. Ohio, supra, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and the subsequent arrest was likewise unconstitutional. All that the DEA agents knew before making the stop was that McCaleb and Page had gone to Los Angeles on a short trip; that McCaleb and Page had one suitcase for themselves and a third person; and that McCaleb and Page were wearing the same clothes which they wore on their trip to Los Angeles. After the illegal stop, the DEA agents arrested McCaleb and Page once they learned that aliases were used on the flight coupons and that Page lied about the length of time they had been in Los Angeles. The DEA agents did not have probable cause to arrest McCaleb and Page, even using the information which was the fruit of an illegal Terry stop along with the information known before the stop, because, unlike in the present case and in

*Prince,* the DEA agents arresting McCaleb and Page had no information outside what they had observed and learned at the airport to suggest that McCaleb and Page were presently or in the past connected with illegal narcotics traffic. Hence, what facts the DEA agents did have in *McCaleb,* although similar to those also present in appellant's case and in *Prince,* did not fit into a larger picture of narcotics traffic.

Affirmed.