UNITED STATES of America,
Plaintiff-Appellee,

v.

Erma SMITH, Defendant-Appellant.

No. 77–5234.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 15, 1977.

Decided April 19, 1978.

Rehearing En Banc Denied
Aug. 8, 1978.

---

**36.** *Id.* at 108 n. 9, 95 S.Ct. at 860.

Clarence M. Bradfield, Terry & Bradfield, Detroit, Mich., (Court Appointed-CJA), Gad L. Holland, Detroit, Mich., for defendant-appellant.

Philip M. Van Dam, U. S. Atty., Victoria Toensing, Asst. U. S. Atty., for plaintiff-appellee.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellant, Erma Smith, was convicted after a bench trial of possessing with intent to distribute a controlled substance (heroin), in violation of 21 U.S.C. § 841(a)(1). The issues raised on appeal are whether the district court should have granted Appellant's motion to suppress the heroin for the reason that it was the fruit of an illegal stop by a Drug Enforcement Agency (DEA) agent or because it was the fruit of a warrantless search for which her consent was coerced. For the reasons stated below, we affirm.

On November 3, 1975, DEA Agent James Seward was on general surveillance duty in the Detroit Metropolitan Airport. He watched closely persons deplaning from a non-stop flight from Los Angeles since such flights were known to frequently carry drug couriers. Agent Seward's attention was drawn to Appellant since she had the following characteristics of the DEA's "drug courier profile:"[1] youth, carrying only a purse and small carry-on bag and picking up no luggage at the airport, traveling alone and being met by no one at the airport, and directly leaving the airport in a hurried and nervous manner.[2] An additional salient factor was an abnormal and obvi-

---

[1] This Circuit is rapidly developing substantial case law regarding the DEA's loosely formulated "drug courier profile" and the fourth amendment. For an explication of the profile and its fourth amendment significance, see *United States v. Canales,* 572 F.2d 1182 (6th Cir. 1978); *United States v. Pope,* 561 F.2d 663 (6th Cir. 1977); *United States v. Lewis,* 556 F.2d 385 (6th Cir. 1977), *cert. den.* — U.S. —, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978); *United States v. Craemer,* 555 F.2d 594 (6th Cir. 1977); *United States v. Gill,* 555 F.2d 597 (6th Cir. 1977); and *United States v. McCaleb,* 552 F.2d 717 (6th Cir. 1977).

[2] Profile characteristics not exhibited by Appellant include use of currency to pay for the plane ticket and a round trip in a short period of time to and from a major drug import center, such as Los Angeles.

ous bulge around Appellant's abdomen, which in Agent Seward's experience suggested that she was carrying illegal drugs.[3]

So alerted, agent Seward followed Appellant and stopped her as she hailed a cab outside the airport. He identified himself and told Appellant he suspected she was carrying illegal narcotics. He asked Appellant for some identification and, appearing very nervous, she produced her driver's license and a plane ticket in the name of Mr. L. Summers.[4] Agent Seward asked Appellant to accompany him to the airport DEA office for further investigation and she went along voluntarily. At the DEA office, Agent Seward, in the presence of another agent, asked for her consent to search her purse and carry-on bag. Although informed that she could refuse consent, Appellant consented to the search saying she had nothing to hide. The search of the purse turned up marijuana and Appellant was immediately placed under arrest. A full search of Appellant's person then revealed that her abnormal abdominal bulge was a package of heroin strapped to her body.

Appellant raises three issues on appeal, each directed to the refusal of the district court to suppress the heroin. She argues that the initial stop by Agent Seward was illegal as not based upon probable cause or reasonable suspicion under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). From this she argues that her consent to the search of her purse was the tainted fruit of the illegal stop and that her consent was not otherwise shown to be voluntary. From this flows the argument that her ensuing arrest and search of her person were illegal as the fruit of the illegal search of her purse.[5]

■ In this Circuit's several examinations of the drug courier profile and the fourth amendment,[6] the rule has emerged that the characteristics of the drug courier profile are not alone enough to provide probable cause to arrest nor necessarily enough to create a reasonable suspicion to stop under *Terry.*[7] The components of the profile may be considered, however, along with other relevant information known to the officer in evaluating whether he had probable cause to arrest or reasonable suspicion to stop.[8] We are presented here with the issue of whether a person meeting most of the characteristics of the drug courier profile *plus* exhibiting an abnormal abdominal bulge gave Agent Seward reasonable suspicion to stop pursuant to *Terry.*[9]

■ The standard espoused in *Terry* is a general one:

> in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. 392 U.S. at 21, 88 S.Ct. at 1880 (footnote omitted).

---

3. The bulge did not cause Appellant to appear pregnant.

4. Traveling under an alias is another characteristic in the drug courier profile.

5. The government could have argued, perhaps successfully, that the arrest of Appellant was independently based on probable cause. The government conceded at oral argument, however, that there was no probable cause to arrest Appellant until the marijuana was found in her purse. Thus the government relies upon the legality of the initial stop of Appellant under *Terry* and the voluntariness of her consent to the search of her purse. We accept the government's concession for purposes of analysis only and proceed to examine the legality of the stop and the voluntariness of her consent. We express no opinion as to whether there was probable cause to arrest Appellant independent of the discovery of marijuana in her purse.

6. *See* cases cited in note 1, *supra.*

7. This rule was established in *McCaleb,* 552 F.2d at 720, and *Craemer,* 555 F.2d at 596, and followed in *Lewis,* 556 F.2d at 389, and *Pope,* 561 F.2d at 667–68.

8. *Pope,* 561 F.2d at 667, and *Gill,* 555 F.2d at 599. In *Lewis,* 556 F.2d at 389–90, the profile was one "layer of information" in the "laminated total" of probable cause.

9. Since the government does not argue this created probable cause to arrest, we do not address that issue. *See* note 5, *supra.*

While our cases have held that the drug courier profile alone does not necessarily provide sufficient "specific and articulable facts," we think that the elements of the profile met here *plus* the abnormal abdominal bulge provided such facts.[10] Agent Seward testified that both his experience and training films he had viewed led him to believe illegal narcotics were being carried in the bulge. Appellant offered no evidence as to possible innocent behavior associated with such bulges. While this is conceivably consistent with innocent behavior, none is readily apparent. Moreover, *Terry* itself dealt with "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." *Id.* at 22, 88 S.Ct. at 1880. Agent Seward was "entitled to draw [specific reasonable inferences] from the facts in light of his experience." *Id.* at 27, 88 S.Ct. at 1883. We hold that Agent Seward had knowledge of sufficient specific and articulable facts which gave him a reasonable suspicion "that criminal activity may [have been] afoot," *id.* at 30, 88 S.Ct. at 1884, permitting him to temporarily stop Appellant under the authority of *Terry.*

Appellant argues in the alternative that *Terry* has no application to this cause since *Terry* involved a seizure of weapons and here drugs were seized. Since our prior drug courier profile cases have assumed that *Terry* was applicable to this factual situation without fully discussing the issue,[11] we offer this further explanation. A careful reading of *Terry* reveals that it discusses two distinct police activities. First, it approves investigative stops by the police. These do not require probable cause but only require what has been called a reasonable suspicion that the person stopped was engaged or was about to engage in criminal activity. *Id.* at 22, 88 S.Ct. 1868. The propriety of such stops was never seriously questioned in *Terry.*[12] The Court's sanction of the practice was designed to serve the legitimate governmental interest in "effective crime prevention and detection." *Id.*

The second aspect of *Terry* was its approval of frisks by the police of the persons they have stopped. Such frisks, which are limited searches of the person, also do not require probable cause but only a reasonable suspicion that the person stopped is armed. *Id.* at 30, 88 S.Ct. 1868. The propriety of such frisks was the "crux of [the] case," *id.* at 23, 88 S.Ct. 1868, and the Court's sanction of them is what makes *Terry* significant. The rationale behind allowing frisks was to permit the officer to take reasonable precautions for his own safety consistent with the detainee's fourth amendment interests. *Id.* at 26–27, 88 S.Ct. 1868.

Subsequent Supreme Court opinions confirm this two-part analysis of *Terry.* In *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Court cited *Terry* for the proposition that an officer may make a "brief stop of a suspicious individual, in order to determine his identity or maintain the status quo . . . ." It was at a later point in the opinion that the Court discussed the legality of the search involved there. More recently in

---

10. The presence of an abnormal bulge in one's clothing was given special significance in suggesting the presence of drugs in *United States v. Oates,* 560 F.2d 45, 60 (2d Cir. 1977). The bulge more than compensates for the few missing elements of the drug courier profile. *See* note 2, *supra.*

Our recent decision in *United States v. Canales,* 572 F.2d 1182 (6th Cir. 1978), sets forth a somewhat different factual situation also found to support a reasonable suspicion to stop pursuant to *Terry,* although falling short of probable cause.

11. *See Canales,* 572 F.2d at 1183; *Pope,* 561 F.2d at 667; *Lewis,* 556 F.2d at 389–90;

*Craemer,* 555 F.2d at 597, and *McCaleb,* 552 F.2d at 720.

12. Technically the Court's approval of stops solely for detention or interrogation was *dictum* as the Court expressly limited its holding to stops that accompany frisks for weapons, 392 U.S. at 19 n. 16, 88 S.Ct. 1868. Later cases, however, clearly elevate this *dictum* to constitutional proportions. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and *United States v. Brignoni-Ponce,* 422 U.S. 873, 880–81, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), discussed *infra.*

United States v. Brignoni-Ponce, 422 U.S. 873, 880–81, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975), the Court again read *Terry* as treating the stop and the frisk separately in approving a limited stop based upon reasonable suspicion even though not accompanied by any search.

In this case, we are concerned only with the first aspect of *Terry*—the stop. This has no particular connection to weapons and requires only a reasonable suspicion that the detainee has engaged or is about to engage in criminal activity, which can include drug offenses. It is only the second aspect of *Terry*—the frisk—which is connected to weapons since it requires a reasonable suspicion that the detainee is armed.[13] But this cause does not involve a *Terry* frisk and the government has not argued, and could not on this record, that the search of Appellant was justified by a reasonable fear that Appellant was armed. Appellant's argument that *Terry* is inapplicable misses the mark.

■ Other circuits have reached the result we reach here.[14] Of particular inter-

est is the recent Second Circuit decision in *United States v. Oates,* 560 F.2d 45 (2d Cir. 1977). There the court said it was "well-settled that . . . a citizen may be . . . 'stopped,' for investigative purposes," *id.* at 57, and it "is now axiomatic that a law enforcement officer has the power, indeed the obligation, to detain a person temporarily for the purpose of interrogating him" if the officer has a reasonable suspicion about the person. *Id.* at 58–59. (Footnote omitted.) Just as we have done here, the Court analyzed separately the propriety of the stop and the frisk. *Oates* also involved a stop in an airport and the court approved a procedure like that in this case of escorting the detainee to a private office to escape the congestion of the airport's public areas. *Id.* at 57.[15]

■ Thus Appellant's arguments that the requisite reasonable suspicion under *Terry* did not exist and that *Terry* is inapplicable must fall. With them falls Appellant's claim that her consent to the search of her purse was the fruit of an illegal stop. Nor do we agree with the contention that Ap-

13. One need look no further than *Terry's* companion case, *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), to realize that a *Terry* frisk cannot be used to search for drugs.

14. *See, e. g., United States v. McDaniel,* 550 F.2d 214, 217 (5th Cir. 1977); *United States v. Magda,* 547 F.2d 756 (2d Cir. 1976); *United States v. Branch,* 178 U.S.App.D.C. 99, 108 n. 24, 545 F.2d 177, 186 n. 24 (1976); and *United States v. Hall,* 174 U.S.App.D.C. 13, 525 F.2d 857 (1976).

15. All of the actions taken by Agent Seward were consistent with a *Terry* stop and did not amount to an arrest (until Appellant was arrested upon discovery of the marijuana in her purse). The permissible purposes of a *Terry* stop include determining the detainee's identity, *Adams v. Williams,* 407 U.S. at 146, 92 S.Ct. 1921, maintaining the status quo temporarily, *id.,* asking the detainee to explain the suspicious circumstances, *United States v. Brignoni-Ponce,* 422 U.S. at 881–82, 95 S.Ct. 2574, and general investigation and interrogation, *United States v. Oates,* 560 F.2d at 57 & 59. Certainly a request for consent to search is within the range of permissible actions. Escorting Appellant to the DEA office was reasonable under the circumstances, since she went voluntarily, and did not convert the *Terry* stop into an arrest. *Oates,* 560 F.2d at 57.

Of particular interest on the issue of whether escorting appellant to the airport DEA office constituted an arrest is our recent decision in *United States v. Canales,* 572 F.2d 1182 (6th Cir. 1978). *Canales* was another Detroit airport drug seizure case in which the district court found that the defendant voluntarily accompanied DEA agents to the airport DEA office. While *Canales* is factually distinguishable from this case in that there the defendant suggested they go to the DEA office, we did not place special emphasis on that fact. Rather, we said that if the district court's findings were not clearly erroneous, then "the defendant's presence in the DEA office was as a volunteer and not an arrestee." 572 F.2d at 1188. The findings were held not clearly erroneous and the conviction was affirmed. The district court's finding here that appellant went to the DEA office voluntarily is similarly not clearly erroneous, making her presence there "as a volunteer and not an arrestee."

The situations here and in *Canales* are both distinguishable from that in *United States v. McCaleb,* 552 F.2d 717, 720 (6th Cir. 1977), where the defendants "were *taken* to the private office and were *not free to leave.*" (Emphasis added.) Some element of official coercion is necessary to effectuate an arrest.

pellant's consent was otherwise involuntary. The district court found her consent voluntary and that finding is not clearly erroneous. *United States v. Sumlin,* 567 F.2d 684, 688 (6th Cir. 1977); *United States v. Hearn,* 496 F.2d 236, 242 (6th Cir.), *cert. den.* 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974). Consequently, the search of Appellant's purse was legal and the discovery of marijuana provided probable cause to arrest her. The search of Appellant's person was legal as an incident to her arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The district court did not err in refusing to suppress the heroin.

Affirmed.

EDWARDS, Circuit Judge, dissenting.

Respectfully, I dissent from the opinion of the court. I think it will inevitably be read as authorizing both stop and search in drug cases on a standard of "reasonable suspicion." In this respect its rationale and its result are inconsistent with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and are directly violative of *Terry's* companion case, *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

*Terry's* rationale depended on 1) a policeman with enough information concerning a possible violent crime about to be committed to have a duty to investigate further, 2) a need for the officer to protect himself from weapons while investigating, and 3) a narrowly limited intrusion (a "pat down") upon the privacy of the person searched. In this case only the first condition is met. The *Terry* opinion clearly did not authorize a search of a person on less than probable cause when there was, as here, no suggestion of any threat to the officer's safety.

I recognize, of course, that the result reached here is premised on the claimed voluntariness of the search of Smith's purse, as found by the District Judge. But in my view, *United States v. McCaleb,* 552 F.2d 717, 720 (6th Cir. 1977), requires the holding that the arrest occurred when the agent took Smith to the office. Nothing in this record indicates that she was free to leave, and there is no reliance in the opinion upon the Fourth Amendment requirement of probable cause.

In *United States v. McCaleb, supra,* which is the leading case on this subject in this Circuit, Judge Peck's opinion said in part:

> As this court stated in *Manning v. Jarnigan,* 501 F.2d 408 (6th Cir. 1974), "[t]he difference between an investigatory stop and an arrest has yet to be spelled out. . . . [However], this was clearly a deprivation of liberty under the authority of law. It does not take formal words of arrest or booking at a police station to complete an arrest." 501 F.2d at 410. When appellants were taken to the private office and were not free to leave, the arrest was clearly complete. *See, United States v. Jackson,* 533 F.2d 314 (6th Cir. 1976).

*United States v. McCaleb, supra* at 720.

I see no meaningful way of distinguishing our instant case from *McCaleb's* conclusion that when appellants were taken to a private office and were not free to leave, the arrest was clearly complete. *McCaleb* also dealt with the suggestion, repeated by the government in our instant case, that in any event, consent to the search of a purse which proved to contain several marijuana cigarettes was voluntary given. In *McCaleb* we said:

> Consent "must be proved by 'clear and positive testimony,' *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), and 'must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion,' *Simmons v. Bomar,* 349 F.2d 365 (6th Cir. 1965)." *United States v. Hearn, supra,* 496 F.2d at 244. "[T]he mere fact that a person has been arrested in violation of his constitutional rights casts grave doubt upon the voluntariness of a subsequent consent. The Government has a heavy burden of proof in establishing that the consent was the voluntary act of the arrestee and that it was not the fruit of the illegal arrest." *United States v. Bazinet,* 462 F.2d 982, 989–90 (8th Cir.), *cert. de-*

*nied,* 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972); *see also, Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Manning v. Jarnigan, supra,* 501 F.2d at 411–412.

*United States v. McCaleb, supra* at 721 (footnote omitted).

Additionally, it should be noted that in *United States v. Craemer,* 555 F.2d 594 (6th Cir. 1977) (cited in the majority opinion), Judge Celebrezze affirmed suppression of evidence in an airport search. The opinion relied upon *United States v. Hunter,* 550 F.2d 1066 (6th Cir. 1977), and accurately described the holding in the *Hunter* opinion in the following language:

The Government makes the additional contention that, even if the agents did not have probable cause to search, the facts known to the agents were sufficient to warrant an investigative stop under the stop and frisk principle of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This argument is unavailing after our decision in *United States v. Hunter,* 550 F.2d at 1070–72, where we held that a search by DEA agents under circumstances similar to those present in this case exceeded the legitimate scope of a *Terry* search. In *Hunter* we noted that *Terry* authorizes a limited protective search for weapons but does not permit the search of luggage for narcotics.

*United States v. Craemer, supra* at 597. *See also United States v. Hunter, supra* at 1070.

In our instant case, like *McCaleb* and *Hunter,* appellant Smith was stopped by a Drug Enforcement Agent who identified himself as such. She was never told that she was not under arrest, was free to depart, or did not have to accompany the agent to the airport office. Under these circumstances, she was clearly under arrest when, after the agent took her to the airport office, he asked to search her purse. In such a setting, the "voluntary" agreement of appellant Smith should be regarded as a product of the illegal arrest. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We do not find the sort of detailed facts bearing on voluntariness in this case upon which Mr. Justice Stewart relied in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In *Schneckloth* the Court held:

We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. *Schneckloth v. Bustamonte, supra* at 248–49, 93 S.Ct. at 2059 (footnote omitted).

Contrary to the facts in *Schneckloth,* appellant in our instant case was in custody, and the investigation had focused upon a specific offense. In our instant case also, there was no evidence of "congenial" atmosphere and no indication that appellant "even attempted to aid in the search." *Schneckloth v. Bustamonte, supra* at 221, 93 S.Ct. at 2044. Even though (as indicated above) our instant appellant was in custody, she was never given *Miranda* warnings.

The majority opinion also cites *United States v. Canales,* 572 F.2d 1182 (6th Cir. 1978). This case is, however, completely distinguished from the instant case by the fact that the defendant therein himself suggested the removal of the discussion to an airport office. The opinion of the court said:

However, the trial court found that Canales himself initiated the trip to the DEA office so that the ensuing conversation would be accorded some measure of privacy. If this finding is not clearly erroneous, the defendant's presence in the DEA office was as a volunteer and not an arrestee. That the defendant would request to be taken to the DEA

office so that the conversation would be outside the presence of his wife and stepson could be viewed as somewhat extraordinary. However, it is not so incredible that it requires this Court to find it clearly erroneous.

*United States v. Canales, supra* 572 F.2d at 1187–1188.

*Canales* is no support for the majority opinion.

I regret to say that in my judgment the court's opinion represents overruling what until today has been regarded as settled law in this Circuit. I also feel that if it is accepted by our Circuit, it would represent serious erosion of the Fourth Amendment which our forefathers regarded as one of the most important rights sought by the American Revolution.