UNITED STATES of America, Plaintiff,

v.

**Michael Jerome STUBBLEFIELD, a/k/a M.J. Stubblefield, a/k/a Jerome Stubblefield, a/k/a Percy Simmons, a/k/a Wytche Stubblefield, and Stacey Stubblefield, Defendants.**

**No. 90–CR–80268–DT.**

United States District Court,
E.D. Michigan, S.D.

March 14, 1991.

Blondell L. Morey, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Thomas V. Wilhelm, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendants' joint motion to suppress evidence seized on March 22, 1990. An evidentiary hearing was conducted on February 27, 28 and March 1, 1991. This Court heard testimony from Agent Braun, Agent Moorehead, Carol Neal, Georgia Stubblefield, Agent Ball, Michael Stubblefield, Stacey Stubblefield and proffers regarding two other defense witnesses not called. In addition to the motions and briefs filed before the evidentiary hearing, this Court also allowed each party to file supplemental

briefs. Upon review of the motions and briefs, the arguments of counsel, and the evidence deduced from the evidentiary hearing, this Court now makes its ruling.

## FACTS

Defendants are each charged in one or more counts of a ten count superseding indictment with unauthorized access device, aiding and abetting thereto, mail fraud, interstate transport of property taken by fraud, destruction of property to prevent seizure and aiding and abetting thereof.

On March 16, 1990, Donna Metcalf, fraud supervisor at Sears Corporation contacted the U.S. Secret Service in Detroit regarding possible credit card fraud. The contact was made due to a Sears credit card issued in the name of Percy Simmons, 1033 Bassett, Detroit, Michigan. The application stated that Mr. Simmons had worked at General Motors for 25 years and had a salary of $87,500.00.

On March 15, 1990, Sears received a telephone order for a washer and dryer charged to the Percy Simmons account. Arrangements were made to deliver the appliances on March 22, 1990 at a cost of $1,694.13.

On March 21, 1990, agents from the U.S. Secret Service contacted General Motors and determined that, in fact, no Percy Simmons had ever been employed by GM. The following day a controlled delivery was conducted.

Agents from the U.S. Secret Service conducted the controlled delivery on March 22, 1990. In an undercover capacity, a Secret Service agent posed as a Sears delivery man, complete with a Sears truck and uniform, attempted to deliver the appliances to the 1033 Bassett address. Defendant Stacey Stubblefield answered the door and signed for the appliances indicating that Percy Simmons was her brother. Upon signing the receipt, the undercover agent revealed his identity and other agents approached the front door of the house. While in the home, agents discovered vari-

ous credit cards and a credit card application. These items represent a portion of the evidence subject to defendants' motion to suppress.[1]

After being denied permission to thoroughly search the home, a search warrant was sought. In the meantime, defendant Michael Stubblefield spoke with an attorney and the attorney informed the agents to leave the home. All agents then left the home and returned several hours later to execute the search warrant.

Upon entering the home, the agents noticed that the house was full of smoke and that several windows were opened. The origin of the smoke was a barbecue inside the garage wherein agents found several credit cards being burned.

Defendants have moved to suppress the evidence alleging that the agents did not have probable cause to enter the premises, nor did the agents have the consent of defendants. Accordingly, defendants claim that the entry and search of their home violated their Fourth Amendment rights. In addition, defendants assert that the evidence obtained from the execution of the search warrant is likewise inadmissible due to the fact that the search warrant was only obtained through the use of those items previously obtained from the initial illegal search.

## OPINION

In order to determine the admissibility of the evidence seized at 1033 Bassett, this Court must make three determinations. First, whether the agents had probable cause to be at that address. Secondly, whether permission or consent was given by Stacey Stubblefield to enter the house, and finally, whether the protective sweep of the house was necessary. If necessary, the Court must also determine the reasonableness of the protective sweep in light of the circumstances.

---

**1.** Issues concerning the agents' entry of the home and search of the home will be dealt with below.

## PROBABLE CAUSE

■ Based upon the evidence in the record, this Court finds that probable cause did exist. The Secret Service agents were not working merely on a hunch. Instead, the fraud supervisor at Sears had contacted the agents due to a suspicion of fraud. An investigation indicated that, in fact, no Percy Simmons had been employed at General Motors. In addition, a significant purchase had been made on the Percy Simmons account. Accordingly, agents concluded that a controlled delivery was necessary. Based on a totality of the circumstances, a fair probability existed that the credit card in the name of Percy Simmons was fraudulently obtained and used to purchase the appliances from Sears.

The fact that Agent Braun approached the 1033 Bassett address dressed as a Sears delivery man with a Sears truck is totally irrelevant. As an undercover agent, Agent Braun and the other agents had probable cause to make the controlled delivery and if successful, to attempt to question the individuals who were to receive the property.

## CONSENT

Defendants submit Stacey Stubblefield did not give her consent to be questioned or to allow the agents to enter her home. Instead, defendant Stacey Stubblefield has submitted that within several seconds of signing for the washer and dryer, five or six agents with guns forced their way into her home and began searching the residence. The government submits that Stacey Stubblefield consented to being questioned inside her home.

■ The burden of proof is on the government to show that, in fact, consent was given. Consent must be given voluntarily and not as a result of force or coercion. Voluntariness is a factual question to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223, 93 S.Ct. 2041, 2045–46, 36 L.Ed.2d 854 (1973). The Sixth Circuit

has indicated that consent must be proven by "clear and positive testimony." *United States v. McCaleb*, 552 F.2d 717, 721 (1977). Consent must be "unequivocal, specific and intelligently given and uncontaminated by any duress or coercion." *Id.* However, the government need not establish a "constitutional waiver, intentional relinquishment or abandonment of a known right or privilege." *United States v. Hearn*, 496 F.2d 236, 243 (6th Cir.1974). As a result, consent need not be informed consent for Fourth Amendment purposes. In addition, consent can be given by a third party who has the right of access.

■ In this instance, Agent Moorehead testified that immediately after defendant Stacey Stubblefield signed for the appliances, he left the Sears van and as he approached the entrance to the house, he had the following conversation with Stacey Stubblefield:

Agent: "You're in trouble, let's go inside and talk."

Stacey Stubblefield: "For what?"

Agent: "Credit card fraud."

Stacey Stubblefield: "Okay."

Agent Moorehead testified that upon saying "okay," Stacey Stubblefield led the agents inside the home. Agent Moorehead testified that he was the first agent to enter the home, but once inside the doorway, another agent passed him. According to Agent Moorehead, Stacey Stubblefield was not arrested. Instead, the agents only intended to question Stacey Stubblefield to see why she had signed for appliances allegedly purchased with a fraudulent credit card in the name of Percy Simmons.[2]

Stacey Stubblefield indicated that Agent Braun grabbed her arm and informed her that he was a police officer. At that moment, Stacey Stubblefield testified that all the police ran into the house and took her into the house with them. She indicated she was scared and numb and was never read her rights or asked for permission to enter the home.

---

**2.** In response to defendants' motion to suppress evidence, the government brief indicates that Stacey Stubblefield was arrested. However, the testimony of Agents Braun, Moorehead and Ball, as well as the testimony of defendant Stacey Stubblefield indicates she was not arrested.

This Court concludes that, in fact, defendant Stacey Stubblefield gave her consent to be questioned and to allow the agents inside her home. Stacey Stubblefield was undoubtedly surprised to learn that the Sears delivery man was a U.S. Secret Service agent. Likewise, Stacey Stubblefield was probably not given much time to decide what she wanted to do. The record indicates that after signing for the merchandize, only a few seconds passed before agents actually entered the house. However, the record clearly indicates that before entering the house, Agent Braun identified himself as a police officer and Agent Moorehead indicated that Stacey Stubblefield was in trouble for credit card fraud. Stacey Stubblefield clearly answered "okay" to Agent Moorehead's request to go inside and talk. Under these circumstances, this Court concludes that sufficient consent was given to the agents to allow them to further question Stacey Stubblefield inside the home. Prior to giving consent, Stacey Stubblefield had knowledge that the Sears delivery man was an undercover agent and that Agent Moorehead wanted to go inside to talk about credit card fraud.

During the evidentiary hearing, this Court had an opportunity to and did take into account each witness's ability and opportunity to observe the facts and events that he or she testified to as well as the witness's memory, manner while testifying, any interest, bias, or prejudice the witness may have had and the reasonableness of the witness's testimony considered in light of all the evidence in this case. Based on the aforementioned, this Court has no reason to question the credibility and the believability of Agents Braun, Moorehead and Ball. The testimony of each particular agent corroborates the testimony of the others.

On the other hand, this Court finds that Michael and Stacey Stubblefield are not very credible. While being very articulate on the questions he wanted to answer, Michael Stubblefield was not very articulate or specific on cross examination. Stacey Stubblefield talked very fast and was not responsive to many questions. Accordingly, this Court concluded both defendants had very low credibility.

In addition, other witnesses provided by the defendant either testified to irrelevant material or were totally incredible. Specifically, the proffered testimony of two witnesses not called, as well as the testimony of Carol Neal and Georgia Stubblefield all related to the circumstances inside the house during the attempt to question the defendants, as well as the physical condition of the inside of the house. For example, Carol Neal testified as to what she perceived was a "general search." She also testified that she saw agents with guns and another agent with a clear see-through bag containing papers. According to Carol Neal, Mike Stubblefield was handcuffed and Stacey Stubblefield was not.

Georgia Stubblefield indicated that in her room, a drawer was opened and a photo was turned over. She testified that she refused to sign a consent to allow a search and as a result, Agent Moorehead had to leave to get a search warrant.

Such testimony may be relevant where incriminating statements are made and the issue is whether the defendant was in custody. However, such issues are not before the Court. Defendants' motion to suppress deals solely with physical evidence found in the house while speaking with Stacey Stubblefield and/or searching for Michael Stubblefield. Accordingly, which agents had guns, who was handcuffed and where each agent was standing is irrelevant to the issues before this Court.

With this in mind, the proffered testimony as well as the testimony of Carol Neal and Georgia Stubblefield contains little weight due to the fact that those persons were not at the residence when Stacey Stubblefield signed for the merchandize and consented to the questioning inside the home. Nor were those witnesses present during the subsequent protective sweep to locate Michael Stubblefield.

### PROTECTIVE SWEEP

█ Upon entering the home, defendant Stacey Stubblefield informed the agents

that Michael was also in the house. Agent Braun testified that the officers called out for Michael by name in loud voices approximately ten times. However, Michael did not answer. After receiving no response, Agent Moorehead testified that the officers began looking for Michael Stubblefield in the home. Agent Moorehead testified that the purpose of this protective sweep was for the safety of all the people in the home. Agent Moorehead testified that the officers did not want to question Stacey Stubblefield if, in fact, Michael Stubblefield was in the home and not answering. Accordingly, the agents searched for Michael Stubblefield in the kitchen, the bathroom and in a bedroom.

Agent Moorehead testified that while in a bedroom, he saw a Mobil card on a dresser in the name of Michael Tobenfield. Agent Moorehead picked up the credit card in order to question defendant Stacey Stubblefield regarding whether any person by that name lived in the home. Agent Braun found a credit card application for AMOCO on the kitchen table in the name of E.G. McGee. Agent Braun brought the credit card application to the attention of Agent Moorehead. Neither Michael Stubblefield or Stacey Stubblefield knew who the application belonged to or how it got on the table.

Agent Moorehead testified that the protective sweep lasted approximately two minutes. Agents then found Michael Stubblefield in the basement and instructed him to come upstairs where he was then patted down. The officers asked Michael Stubblefield for his ID, which he could not produce, claiming it was in his mother's car. Approximately 10 to 15 minutes later, Michael Stubblefield indicated that his ID might be in his wallet in his bedroom.[3] As a result, Michael Stubblefield led Agent Moorehead downstairs into his bedroom to locate his identification. Agent Moorehead testified that Michael Stubblefield indicated the ID would be on the wall or in his wallet. After Agent Moorehead could not locate the identification on the wall, he

picked up Michael Stubblefield's wallet and opened it. Inside the wallet was Michael Stubblefield's identification and next to it were two more credit cards. One credit card was in the name of Sarah Smith, the other credit card was in the name of M.J. Stubblefield.

Defendants submit that these items seized should be inadmissible as the result of a generalized search effectuated through a "surreptitious ruse" to gain entry by posing as a Sears delivery person. Defendants claim the items that were discovered were outside the scope of what a delivery person would normally be looking for.

This Court is not persuaded by defendants' arguments. As previously indicated, the agents did not enter the house under the guise of Sears delivery men. Instead, the undercover disguise was only used to see who, in fact, would accept delivery of the items. Upon signing for the items, Agent Braun clearly identified himself as a police officer and Agent Moorehead clearly indicated that the defendant Stacey Stubblefield was in trouble for credit card fraud. Moreover, this Court has previously concluded that Stacey Stubblefield consented to Agent Moorehead's request to speak with her inside.

This Court concludes that a generalized search of the home did not occur upon entering the house for the first time. Instead, the officers conducted a protective sweep for purposes of locating Michael Stubblefield after learning of his presence in the home, calling out his name and receiving no response.

The rationale behind a protective sweep is obvious. The agents were entitled to search the premises for an individual they had reason to believe was in the house but not answering when called by name. Whether Michael Stubblefield was sleeping or could not hear the yelling is irrelevant and in no way diminishes the necessity of locating all persons potentially inside the home prior to speaking with Stacey Stubblefield. The Constitution does not require

---

**3.** Michael Stubblefield had already been handcuffed because, according to Agent Moorehead,

he was a big guy, had no identification and his sister was in trouble.

officers to take unnecessary risks such as would have occurred had the officers ignored the fact that Michael Stubblefield was in the house yet his exact location was unknown.

The government submits that the evidence seized during the protective sweep is admissible under the "plain view" doctrine. The plain view doctrine is triggered when police are in a position where they have a lawful right to be, the evidence is discovered inadvertently and it is apparent from the face of the item that there is probable cause it is evidence of a crime. *United States v. Beal,* 810 F.2d 574 (6th Cir.1987). The government submits that these requirements have been satisfied in this case. This Court agrees.

The police had obtained Stacey Stubblefield's consent to enter the home for purposes of speaking with her regarding credit card fraud. The items seized were inadvertently discovered while searching through various portions of the house for Michael Stubblefield. This Court concludes that under the circumstances, this protective search was reasonable. The Agents clearly called out for Michael numerous times, but no response was given. The officers had knowledge that Michael Stubblefield was in the house but his failure to respond created a potentially dangerous situation for all occupants of the home. Accordingly, it was reasonable for the agents to search the house in order to obtain information as to who was occupying the premises.

Agent Ball testified that he was positive that no search of the home was made except a protective sweep. During the evidentiary hearing, this Court made a notation that Agent Ball had high credibility. Agent Moorehead also indicated that the protective sweep to search for Michael Stubblefield did not lead officers to open drawers or search in places where a man could not be hidden. Upon review of the testimony of the agents, this Court concludes that the scope of the protective sweep was not exceeded by the agents. The credit cards that were obtained were in plain view and discovered inadvertently by

the officers as they proceeded through with the protective sweep. The officers knew that they were at the home in order to investigate potential credit card fraud and, therefore, items such as credit cards on dressers, credit card applications on tables and credit cards in the wallet of Michael Stubblefield are certainly "apparent" or incriminating on their face. Credit cards and/or applications in several different names create a probable cause that the evidence is indicative of a crime.

Accordingly, this Court concludes that the agents had probable cause to attempt the undercover controlled delivery, the agents obtained consent to speak with Stacey Stubblefield regarding the credit card fraud inside of her home and the protective sweep for Michael Stubblefield was reasonable under the circumstances. The officers did not exceed the scope of the search for Michael Stubblefield. Closed drawers or other areas where a man could not hide were not inspected. As a result, this Court concludes that no Fourth Amendment violations have occurred with respect to these seized items. Therefore, the items seized pursuant to the search warrant are also admissible since the search warrant was obtained on the basis of the earlier items seized.

## CONCLUSION

Based upon the foregoing, this Court hereby DENIES defendants' motion to suppress evidence.

IT IS SO ORDERED.