**UNITED STATES of America, Plaintiff,**

v.

**Tracy COTTON, Defendant.**

**Cr. No. 88–20299–TU.**

United States District Court,
W.D. Tennessee, W.D.

March 13, 1989.

---

Timothy R. DiScenza, Asst. U.S. Atty., Memphis, Tenn., for plaintiff.

Edward C. Duke, Federal Public Defender, Memphis, Tenn., for defendant.

## ORDER ON MOTION TO SUPPRESS

TURNER, District Judge.

The defendant Tracy Cotton has moved this court to suppress certain evidence, both tangible and intangible, seized or otherwise obtained pursuant to a warrantless search and seizure of the defendant on or about October 26, 1988. The facts leading to the defendant's arrest and the indictment which is the subject of this case may be briefly recounted as follows:

On October 26, 1988, the defendant, who was not known as a drug dealer to any of the agents involved in this particular arrest, was observed after having deplaned from a Los Angeles flight which had arrived in Memphis in the early morning at around 7:15 a.m. It is established that Los Angeles is a known source city for narcotics.

The defendant while walking from the airplane to the taxi area was carrying a "real small" shoulder bag (approximately 12 inches by 12 inches) and later left the airport without picking up any other luggage of any kind. As the defendant walked down the corridor to the taxi stand from the deplaning gate, a lady was observed walking behind him, but not with him. When the defendant arrived at the taxi stand, the lady and the defendant entered the cab together and were taken to a hotel near the airport where the defendant paid cash for a one-night room. The defendant registered as being from Los Angeles.

Thereafter, the defendant, according to surveillance, stayed in his room all day for approximately 16 hours until a co-defendant in this case entered his room for approximately 2 or 3 minutes at around 11:00 p.m. Shortly after entering the room, the codefendant came out of the room, looked down the hallway both ways and then motioned or signalled for the defendant Cot-

ton to come out of the room, which Cotton did. Cotton and his co-defendant walked down the hall to the elevators where they were stopped by police officers. Following the stop, an immediate pat-down was conducted and one officer felt a hard and firm object on defendant's waistband, lifted his shirt and found a package of cocaine which is the subject of the motion to suppress in this case. Following the pat-down and the location of the cocaine on the defendant's person, the defendant made statements to police and gave permission to police to search his hotel room, where additional cocaine was found.

Defendant argues that the seizure and search of his person in this case were carried on without probable cause and contends that they were in violation of his Fourth Amendment rights under the United States Constitution.

The government grants that it did not have probable cause to arrest the defendant at the time that he was stopped in the hallway, but argues that they had reasonable and articulable suspicion that the defendant was engaged in criminal activity which justified them in making a brief investigative stop pursuant to the authority of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The government further argues that firearms are known as tools of the trade of drug dealers and that since the defendant was reasonably suspected to have been engaged in illegal drug activities, the police officers were within their rights in patting him down for the purpose of determining whether or not he was armed at the time of the *Terry* stop.

It goes almost without saying that any one of the individual activities noted by the testimony of the police officers in this matter would not in and of itself suffice to create a suspicion of criminal activity on the part of the defendant. However, it is not any single activity that this court should examine for the purpose of determining whether reasonable and articulable suspicions suggested to the officers that the defendant was or had been engaging in illegal conduct, thus warranting further investigation. It is the totality of the circum-

stances that is considered in determining if the suspicions are indeed reasonable. *Id.* at 22, 88 S.Ct. at 1880.

■ It is also clear that drug courier profile characteristics alone will not suffice to justify the *Terry* stop. *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *United States v. Smith*, 574 F.2d 882 (6th Cir.1978). Here, the police officers acted on more than simply drug courier profile characteristics or "inarticulate hunches" which are also insufficient to justify a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In this case, the officers not only had observed many acts on the part of the defendant which fit typical drug courier profiles, but the officers had also observed that the defendant had paid cash for an overnight room at a motel near the airport, when he carried nothing more than a small shoulder bag; had entered the room early in the morning and neither left it nor had any visitors for approximately 16 hours when, late at night, he had a visitor who entered the room for a minute or two and then came out ahead of the defendant to make a visual search of the hallway before motioning the defendant out of the room.

These facts observed by the police officers, taken together with reasonable deductions that may be drawn from such facts, lead this court to conclude that the officers involved had "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop that followed with respect to the defendant. *Id.* at 1, 21, 88 S.Ct. at 1868, 1879.

■ However, the mere fact that a stop may be justified under the Fourth Amendment because of reasonable and articulable facts that lead to a suspicion that the defendant has been or is engaged in criminal activity, is not itself alone enough to permit a search of the person for weapons.

That the initial "stop" was permissible does not, of course, establish, without more, that any search, or "frisk," incident to that stop was equally sustainable. Case law teaches that any search of the detainees must be limited to a protec-

tive frisk for weapons, (citations omitted) and before such a pat-down search can be conducted the police officer must have reason to believe that the suspect may be armed and dangerous. (Citation omitted).

United States v. Oates, 560 F.2d 45, 61 (2d Cir.1977).

The search of a person for a weapon is restricted:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

The Terry Court recognized that a search for weapons involves more than just the governmental interest in investigating crime:

> [I]n addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.

Id. at 23, 88 S.Ct. at 1881.

As the Terry Court concluded, the courts cannot blind themselves to the necessity for law officers having the ability to protect themselves even in situations where they lack probable cause for an arrest. Recognizing that even a limited search of one's clothing for weapons constitutes a relatively severe intrusion upon one's person, being "annoying, frightening, and perhaps humiliating," Terry at 25, 88 S.Ct. at 1882, the law of this country has also acknowledged that "it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm", Terry at 24, 88 S.Ct. at 1881, if there is justification in believing that the individual whose suspicious behavior is being investigated is armed and presently dangerous.

In this case, there are no facts to indicate that the defendant was armed and presently dangerous other than the reasonable and articulable facts and inferences arising therefrom that the defendant was engaged in drug dealing, taken together with the recognized fact that drug dealers frequently use weapons in their illegal activities. United States v. Oates, 560 F.2d 45 (2d Cir.1977); United States v. Korman, 614 F.2d 541 (6th Cir.), cert. denied, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980); United States v. Marino, 658 F.2d 1120, 1123 (6th Cir.1981); United States v. Trullo, 809 F.2d 108 (1st Cir.1987).

The United States argues in brief that:

> Thus, the United States would submit that given the experience and suspicions of the officer, that is that the defendants were engaged in what was obviously a substantial narcotics transaction, a reasonably prudent officer in the circumstances would undoubtedly be warranted in the belief that his safety or that of others could be in danger, and the protective pat-down on the defendant was proper.

Knowing that the defendant had travelled from Los Angeles and that the facts heretofore discussed lead to a reasonable suspicion that defendant was engaged in illegal drug activities, it was rational for the police officers to infer that the defendant's suspected drug activities were substantial.

Undoubtedly, a belief that the suspect may be armed and dangerous can be based on the suspected criminal activity involved.

*United States v. Oates,* 560 F.2d at 62. Here, the criminal activity suspected to exist at the time of the pat-down was a substantial drug transaction. Given the fact that substantial drug dealers frequently arm themselves with firearms, the nature of the suspected activity in this case would lead to the conclusion that the defendant might reasonably be expected to be armed.

It may be granted in this case that the police officers' belief that the defendant might be armed rests on less than absolutely compelling conclusions. However, a compelling conclusion is not the test to which police officers should be subjected in protecting against the very danger recognized by the Supreme Court in *Terry.* When the protection of the investigating officer is the issue at question, it seems inappropriate for the courts to set a balancing test between need and a citizen's desire to be free from governmental intrusions at so high a stage that it would be difficult for the police officer to justify a pat-down. We do not talk about a full search of the defendant, nor removal from his person of all objects that might be carried by him. Here we talk of a simple pat-down of the defendant's outer clothing for the purpose of determining whether or not he is armed so that the brief investigation pursuant to the *Terry* stop may be conducted safely.

■ This court concludes that police officers who have a reasonable suspicion to believe that the subject is engaged in a substantial illegal drug transaction such that a *Terry* stop is warranted is also justified in patting down the suspect's outer clothing to determine whether or not the suspect is armed. In short, it is reasonable to believe that one who is suspected of carrying on a substantial illegal drug transaction may be armed and dangerous to the investigating officer. Under these circumstances, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety ... was in dan-

ger." (citations omitted). *Terry,* 392 at 27, 88 S.Ct. at 1883.

The motion to suppress is DENIED.