19 F.3d 1435
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vincent A. POWELL, Defendant-Appellant.
 No. 93-5598.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1994.
 
 Before: RYAN and NORRIS, Circuit Judges; and BERTELSMAN, Chief District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendant Vincent Powell entered a conditional guilty plea to a charge of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). He was sentenced to 120 months imprisonment and five years supervised release. On appeal, Powell challenges the district court's refusal to grant his motion to suppress the crack cocaine found on his person. The sole issue is whether the authorities had a reasonable suspicion of criminal activity when they seized Powell.
 
 I.
 
 2
 Vincent Powell deplaned from American Airlines Flight 1357 from Miami, Florida, arriving at Nashville International Airport, on the morning of June 30, 1992. Wearing baggy pants with bulging pockets, Powell made his way through the concourse carrying a gym bag. Another man, later identified as Oswald Richards, accompanied Powell. The two men separated as they approached a departure gate for a flight to Pensacola, Florida, and took seats three rows apart in the gate area.
 
 
 3
 Powell caught the attention of Airport Officers Taran Perry and Steve Wood who were monitoring the incoming flight from Miami. The officers' suspicions were roused by the fact that Powell (1) arrived on a flight from a source city for narcotics; (2) was wearing extremely baggy pants with bulging pockets; (3) nervously made his way through the concourse; (4) deplaned with Richards but attempted to conceal the association by sitting apart in the waiting area for a flight to Pensacola; and (5) was flying to Pensacola from Miami via Nashville.
 
 
 4
 Perry and Wood decided to approach the two men separately to ask them some questions. Perry approached Powell and identified himself as a police officer. Perry asked whether Powell would chat for minute, and Powell responded, "Okay." What happened next is a matter of some dispute. Perry testified at the suppression hearing that he told Powell that he was not under arrest and was free to go at any time. Powell disputes this and claims that although Perry was wearing plain clothes, Powell saw Perry's gun. Perry maintains that his gun was in the small of his back, out of sight at all times.
 
 
 5
 According to Perry, he asked to see Powell's ticket, and Powell responded "Sure," handing him the ticket. Perry noticed that the ticket was issued to a 'Ms. Z. Powell." Powell explained that this was a misnomer because his name was Vincent. Perry then asked to see some identification. Powell produced a Florida driver's license issued in the name of Vincent A. Powell. Perry maintains that he then returned the ticket and the license to Powell. Powell alleged in his affidavit in support of the suppression motion that Perry returned the ticket but not the license. At the suppression hearing, Powell testified that Perry retained both items.
 
 
 6
 Perry explained to Powell that he was a narcotics officer looking for narcotics. Perry asked to search Powell's bag and person; Powell responded, "Go ahead." Powell contends that Perry asked only to search his bag, not his person. Perry found nothing out of the ordinary in the bag and returned it to Powell. Powell claims that the bag was never returned.
 
 
 7
 Perry then asked Powell what was bulging in his pants pocket. Powell replied, "Personal stuff." Perry then asked, "What kind of personal stuff?" Powell answered, "Cookies" and took them from his pocket a stack of cream-colored disks wrapped in cellophane and handed the stack of thin, waxy disks to Perry. Powell explained that his girlfriend in Miami had made them, but he did not know what kind of cookies they were.
 
 
 8
 Perry testified that he suspected that the cookies were in fact crack cocaine. He asked Powell what he had in his other pocket and Powell responded by pulling out another package of "cookies."
 
 
 9
 Perry asked if Powell would accompany him to his office in the airport and Powell responded, "Yeah." Powell claims that Perry said, "Come on, let's go." As Perry and Powell exited the gate area, Powell met Officer Woods and showed him the cookies. When Perry asked Powell if he knew Richards, Powell said that he did not. Richards came over to where they were standing, and, when asked, declared that he did not know Powell. Wood testified that Perry then asked Powell whether he would accompany them back to their office, and Powell agreed to do so.
 
 
 10
 After a five minute walk through the concourse, the trio arrived at the office. Perry advised Powell to have a seat. Perry then performed a field test on a sample of one of the cookies. Perry and Wood testified that Powell was not handcuffed during this time. Powell testified, however, that once in the office he was handcuffed. The sample tested positive for crack cocaine. Wood then asked Powell to stand up while he conducted a pat-down search. Wood discovered additional packages of cookies attached to Powell's inside calves. Wood then arrested Powell, read him his Miranda rights,[1] and handcuffed him.
 
 
 11
 After Powell was taken off to jail, Perry found two additional packages of cookies underneath a paper shredder in the office near where Powell was seated. Powell admitted at the suppression hearing that those too were his cookies.
 
 
 12
 Powell moved to suppress the evidence arguing that he was seized without justification (1) when the officer allegedly retained his ticket, wallet, and carry-on bag, or, in the alternative, (2) when he was asked to accompany the officers to their office. On the first argument, the district court credited the testimony of Officer Perry and concluded that Perry did return Powell's ticket, wallet, and bag. Thus, the court held that Powell was not seized at that point. As to the second argument, the court found that Powell was seized when the officer asked him to accompany him to his airport office, but the seizure was supported by a reasonable and articulable suspicion of criminal activity because it occurred after Powell voluntarily produced the cookies for inspection. Powell now appeals.
 
 II.
 A.
 THE INITIAL ENCOUNTER
 
 13
 We must first decide when Perry was seized, and second whether that seizure was constitutionally permissible. The constitutional safeguards courts have erected in the name of the Fourth Amendment are applicable to Powell only if he was "seized" within the meaning of the amendment. United States v. Mendnehall, 446 U.S. 544, 553 (1980). We note at the outset that:
 
 
 14
 not every encounter between a civilian and the police constitutes a "seizure" invoking fourth amendment safeguards. Relevant precedent has made clear that a seizure within the meaning and purpose of the fourth amendment does not occur when government agents approach a pedestrian, identify themselves as law enforcement officers, and solicit conversation or request an interview.
 
 
 15
 United States v. Taylor, 956 F.2d 572, 575 (6th Cir.1992) (en banc ). A seizure occurs when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 574. A brief investigatory stop, while rising to the level of a seizure, is nonetheless permissible if "supported by a reasonable and articulable suspicion that the person [was] engaged in criminal activity." United States v. Knox, 839 F.2d 285, 288 (6th Cir.1988) (quoting Reid v. Georgia, 448 U.S. 438 (1980)). We review for clear error a district court's factual determination that a citizen has been subjected to a Fourth Amendment seizure. Taylor, 956 F.2d at 576.
 
 
 16
 Powell argues first that he was seized when the officer failed to return his plane ticket, wallet, and bag. The district court heard conflicting testimony on the issue and in the end was "more convinced by the testimony of Officer Perry that he did return these items to Powell after inspecting them. Mr. Powell's testimony on these facts was inconsistent and his demeanor at the suppression hearing was not persuasive."
 
 
 17
 Findings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review. Clear error rarely occurs in the context of airport police-civilian encounters because resolution of fourth amendment issues in this milieu is "going to turn largely on credibility determinations made by the district judge at the suppression hearing." "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."
 
 
 18
 Id. (citations omitted). The district court concluded that Officer Perry returned the items to Powell. The district court heard conflicting testimony from Perry and Powell on the point, and chose to credit Perry's testimony. There is simply no basis in record to question this factual finding on appellate review. Id. On the basis of its factual finding, the court further concluded that Powell was not seized within the meaning of the Fourth Amendment. This legal conclusion is consistent with current Fourth Amendment jurisprudence which holds that a "seizure" does not occur when officers approach an individual in an airport, identify themselves, request an interview, and ask to inspect an individual's airline ticket and driver's license. Mendenhall, 446 U.S. at 555; Taylor, 956 F.2d at 577. Therefore, we can find no clear error, and we agree with the district court that Powell was not seized during this encounter.
 
 B.
 THE SECURITY OFFICE ENCOUNTER
 
 19
 Alternatively, Powell argues that he was seized when Perry asked him to accompany him to his office in the airport. The district court agreed that a seizure occurred at this point, but concluded that the seizure was supported by a reasonable and articulable suspicion. We review de novo a district court's legal determination that a seizure occurred. United States v. Levy, 904 F.2d 1026 (6th Cir.1990).
 
 
 20
 We agree with the district court that Powell was seized when Perry asked Powell to accompany him to his office in the airport. We have held that under similar circumstances, a reasonable person would not feel free to leave. See Knox, 839 F.2d at 289; United States v. Smith, 574 F.2d 882, 886 (6th Cir.1978). Moreover, Perry testified that once he saw the cookies, Powell was not free to leave.
 
 
 21
 Powell argues that at this point the officer did not know that the cookies were contraband and could not have formed a reasonable and articulable suspicion of criminal activity. We disagree. We have held that police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that a person is engaged in criminal activity. United States v. Williams, 962 F.2d 1218, 1223 (6th Cir.1992) (citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968)).
 
 
 22
 Taken in isolation, each of Officer Perry's observations may not establish the requisite level of suspicion. But based on an assessment of all the circumstances surrounding Powell's activity, Perry certainly had a reasonable and objective basis for believing that Powell was engaged in criminal activity. Cf. Knox, 839 F.2d at 290. Powell (1) arrived from a drug source city, see id.; (2) wore extremely baggy pants with bulging pockets, see Smith, 574 F.2d at 885; (3) nervously made his way through the concourse, see Taylor, 956 F.2d at 578; (4) deplaned with Richards but attempted to conceal the association by sitting apart in the waiting area for a flight to Pensacola, see Knox, 839 F.2d at 290; and (5) was flying to Pensacola from Miami via Nashville.
 
 
 23
 But there is more. Powell voluntarily produced for Perry's inspection the cream-colored cookies he was carrying in his pants pocket. While Perry testified that the "cookies" could have in fact been ordinary baked goods, he explained that he had "a strong suspicion" that they were not. We think his suspicion was reasonable; it is not uncommon for drug dealers to disguise crack cocaine as cookies. See United States v. Clark, 989 F.2d 447, 449 (11th Cir.1993); United States v. Johnson, 1993 U.S.App. LEXIS 4910, at 2 (D.C.Cir.1993) (unpublished disposition); United States v. Evans, 1993 U.S.App. LEXIS 29706, at 3 (4th Cir.1993) (unpublished disposition). Thus, given the totality of Perry's observations, we conclude that the officer had a reasonable and objective basis for suspecting that Powell was engaged in criminal activity.
 
 III.
 
 24
 Accordingly, we AFFIRM the district court's judgment denying the defendant's motion to suppress.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 See Miranda v. Arizona, 384 U.S. 436 (1966)