PECK, Circuit Judge.
Once again, this Court must consider the admissibility of evidence seized during a search by Special Agent Paul Markonni at the Detroit Metropolitan Airport. Markon-ni has amassed an impressive drug enforcement record in Detroit, resulting in a number of opinions of this Court exploring the boundaries of permissible police activity in dealing with the difficult problem of drug trafficking. This opinion adds another dimension to those boundaries.
On May 2, 1975, Markonni received a telephone call from a federal agent in. San Francisco, seeking his assistance. Kirby Bledsoe had been arrested while attempting to clear Customs carrying three pounds of heroin, and since Bledsoe was from Detroit, Markonni was asked to check out his criminal record. Markonni was also told that Bledsoe’s airplane ticket had been purchased from the Spiekerman Travel Service in St. Clair Shores, Michigan.
Markonni checked with the travel agency and learned that Bledsoe’s ticket was one of a group of four, round-trip tickets to Bangkok, Thailand, purchased for a trip lasting only a few days. The other three tickets had been issued to Richard Wakefield, Horace Wright and Ricky Lowe. Markonni knew that Wakefield had a reputation as a major drug dealer in Detroit. He then checked the passenger list of the Detroit flight, United Airlines Flight 86, that Bled-soe would have taken had he not been arrested, and discovered that “H. Wright” was a passenger, assigned to seat 34B.
Markonni requested that a dog trained to detect narcotics be brought to the airport. Flight 86 arrived shortly thereafter. Mar-konni immediately boarded the aircraft, and asked the passenger in seat 34B his name. On learning that he was Horace Wright, Markonni asked him to step to the back of the airplane while the rest of the passengers disembarked. Checking his driver’s license and passport, Markonni confirmed Wright’s identity and the fact that he was returning from Thailand. A brief pat-down for weapons was conducted, and Wright was then taken to a security room in the airport. ,,
Markonni took Wright’s ticket away from him, and using the attached claim tickets, obtained Wright’s checked luggage and took it to the room as well. A strip search was conducted, and a small quantity of marijuana was found in the toe of one sock. Wright refused to consent to a search of his bags, but when the dog and its handler arrived, Markonni directed the handler to *380 have the dog smell the luggage. The dog responded to one of the bags, and Markonni searched it, using keys he had found in Wright’s clothing to open the bag. He discovered about a quarter-pound of heroin, hidden in a talcum powder container.
Wright was charged with conspiracy to import heroin and possession with intent to distribute heroin, and he was tried before a jury. The heroin discovered in his bag was introduced into evidence over defense objection, and Wright was found guilty of both charges.
Most of the discussion in the briefs and at oral argument was devoted to the question of whether there was probable cause to arrest Wright. This is a difficult issue, discussed in several recent opinions of the Court. Virtually all Markonni knew about Wright at the time of his arrest was that he had undesirable associates and traveled to questionable places, not enough alone to amount to probable cause to arrest. See, United States v. McCaleb, 552 F.2d 717 (6th Cir. 1977) (short trip to and from Los Angeles); United States v. Hunter, 550 F.2d 1066 (6th Cir. 1977) (defendant travelled from Los Angeles in company of suspected drug trafficker). Nevertheless these are part of the “practical considerations of everyday life” which can be considered in determining whether there is probable cause. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1970). The standard for probable cause is well-established, and there is no need to further elaborate on the general guidelines to be considered by the police.[1] There is also no need to decide whether the particular facts and circumstances known to Markonni in this case amounted to probable cause. For the purposes of this decision, we assume that Markonni had probable cause to believe Wright was involved in a conspiracy to import heroin, and was carrying narcotics into Detroit. Nevertheless we must conclude that the evidence seized from his suitcase was discovered during an unlawful search and should not have been introduced against him at trial.
The fundamental principle guiding an analysis of the legality of a search is that “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Those exceptions include automobile searches, hot pursuit, items in plain view, emergency situations, consent, and searches incident to arrest. There is no dispute that Wright’s luggage was searched, and there was no warrant. Therefore, unless the search fell within one of the recognized exceptions to the warrant requirement, it was illegal and evidence seized during the search is inadmissible.
The only rationale urged by the Government, and the only one even remotely applicable under the facts of this case, is that Wright’s luggage was searched incident to his lawful arrest. There is no doubt that the police possess the power to search a lawfully arrested person thoroughly, both to protect themselves against a possible attack with a concealed weapon, and to prevent the destruction of evidence accessible to the person arrested. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 33 L.Ed.2d 427 (1973). It is the law of this Circuit that once the right to search attaches, it is not lost when the arrested person is handcuffed and unable to reach areas otherwise within his or her “immediate control.” United States v. Kaye, 492 F.2d 744 (6th Cir. 1974). Furthermore, at least until United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), it was the law of this Circuit that luggage and parcels in the possession of an arrested *381 person could be searched incident to arrest.[2] Kaye, supra.
In this case, however, the locked suitcases were not in the defendant’s possession at the time of his arrest. In fact, they had not been in his possession since he left San Francisco, but were with the rest of the checked luggage in the custody of the airline. The only reason the luggage was anywhere near Wright at the time it was searched was because Markonni had obtained the bags and placed them there.[3] Just as the police cannot justify a search of an entire house by forcibly escorting an arrested person from room to- room, Markonni cannot justify a search of locked baggage as incident to arrest when the only possibility of the defendant gaining access to the luggage was due to Markonni’s own acts. United States v. Griffith, 537 F.2d 900 (7th Cir. 1976) (search of luggage and bathroom, otherwise out of defendant’s reach, after he was ordered to get dressed); United States v. Mason, 173 U.S.App.D.C. 173, 523 F.2d 1122 (1975). In Mason, the court upheld a protective search of a suitcase when the defendant asked to be allowed to get a jacket from it and started to walk toward it, but pointed out that “[o]f course, Chimel does not permit the arresting officers to lead the accused from place to place and use his presence in each location to justify a ‘search incident to the arrest.’ . . . [But] where a person in custody asks to be given access to an area, he has no basis to object that the arresting officers conducted a protective search to secure the area prior to granting his request.” Id. 173 U.S.App.D.C. at 177, 523 F.2d at 1126.
If there was any danger, however remote, of Wright’s gaining access to the locked suitcases, and obtaining a weapon or destroying evidence, the danger was of Markonni’s own making. The police do not have the right to create a situation which gives them a pretext for searching beyond the area of defendant’s immediate control, after the arrest has occurred.
*382 The Court is fully aware of the unique difficulties involved in attempting to enforce the narcotics laws, and the fact that police officers often are forced to make quick decisions about arrests and searches without the benefit of a detached magistrate’s opinion. However, this is not such a case. Markonni knew, or should have known, that he had no right to search personal effects not in the possession of the defendant when the arrest was made, and there were no exigent circumstances requiring an instant decision as to whether the bag should be searched. The luggage was in police custody, and the defendant was under arrest. We must conclude that there was no justification for the failure to obtain a warrant.
The judgment of conviction is vacated and the cause is remanded to the district court for further proceedings consistent with this opinion.

. See the discussion of this issue in United States v. Van Lewis, 556 F.2d 385 (6th Cir. 1977).

. Chadwick injects uncertainty into this area. That case held that a locked footlocker, seized from the open trunk of an automobile during an arrest, could not be searched back at the police station without a warrant. The Court held:
In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority. Respondents were therefore entitled to the protection of the Warrant Clause with the evaluation of a neutral magistrate, before their privacy interests in the contents of the footlocker were invaded.
433 U.S. at 15, 97 S.Ct. at 2486 (1977). Police have long criticized the courts for a lack of clarity in fourth amendment decisions, and we recognize that our decision not to explore the implications of Chadwick in this case leaves the police without clear guidelines as to the permissible scope of a search of belongings in the possession of a defendant at the time of the arrest. We observe, however, that once the belongings are safely in the possession of the police, there is very little reason other than convenience not to obtain a warrant before a search is conducted. The police would be well advised to err on the side of caution in making these searches, thereby eliminating potentially fatal flaws in any conviction which might ensue — without corresponding disadvantage or even serious inconvenience.

. Once again, for the purpose of this opinion, we assume, without deciding, that Markonni had probable cause to believe the suitcases contained contraband, and had legally seized the bags by claiming them from the airline. United States v. Van Leeuwan, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 222 (1970) (permissible to detain mailed packages until warrant can be obtained). As the Court in Chadwick pointed out, the right to seize is not necessarily the right to search, since exigent circumstances might justify the former, but there are rarely critical circumstances requiring an immediate search once a package or bag is safely in the hands of the police. Furthermore, the search intrudes on privacy interests beyond mere possession:
Respondents’ principal privacy interest in the footlocker was of course not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker. Though surely a substantial infringement with respondents’ use and possession, the seizure did not diminish respondents’ legitimate expectation that the footlocker’s contents would remain private.
433 U.S. at 13-14 n. 8, 97 S.Ct. at 2485.