48 F.3d 1217
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael A. DEAN, Defendant-Appellant.
 No. 94-5248.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1994.
Decided Mar. 14, 1995.
 
 1
 ARGUED: Deborah C. Wyatt, Wyatt & Carter, Charlottesville, VA, for appellant. Joseph E. DePadilla, Third-year Law Student, University of Virginia School of Law, Charlottesville, VA, for appellee. ON BRIEF: Robert P. Crouch, United States Attorney, Stephen U. Baer, Assistant United States Attorney, Charlottesville, VA, for appellee.
 
 
 2
 Before MURNAGHAN and MICHAEL, Circuit Judges, and CURRIE, United States District Judge for the District of South Carolina, sitting by designation.
 
 OPINION
 CURRIE, District Judge:
 
 3
 Appellant Michael A. Dean appeals his conviction for possession with intent to distribute five grams or more of a mixture or substance containing cocaine base. He argues that his confession should have been suppressed, that the evidence was insufficient to sustain the verdict, that the district court erred by denying his request for appointment of new trial counsel, and that his trial counsel was ineffective. We affirm.
 
 I.
 
 4
 On December 19, 1990, Officer Donald Campbell of the Charlottesville, Virginia Police Department received a tip concerning Dean. That night Officer Campbell and several other officers staked out the area of Sunset Avenue and Sunset Road in Charlottesville. Shortly after the surveillance began, Officer Campbell received a call from another officer that Dean's car was heading south on Sunset Road toward the officers. As the car approached, Officer Campbell turned on his car's bright lights and could see Dean in the front passenger seat of the car, a four-door Subaru. Immediately after Officer Campbell turned on his lights, Dean bent over his seat.
 
 
 5
 After the officers stopped the Subaru, they got out of their cars and removed three people from the Subaru. Officer Campbell testified that as he was removing the person in the back seat of the Subaru, he noticed what he thought was a plastic bag of cocaine on the floor in the back seat area. Because of this discovery, the car was searched and the officers recovered two plastic bags with chunks of rock-like substance and one plastic bag of plant material. The three passengers were patted down and held together while the search was done. Officer Campbell conducted a field test on the rock-like substance and determined it to be crack cocaine.[1]
 
 
 6
 The officers then separated and individually interviewed Dean and the other two people. Officer Campbell interviewed Dean alone in his car regarding the drugs found in the Subaru. Officer Campbell testified that he told Dean he was not under arrest. Officer Campbell testified that Dean told him that he had nothing to do with the drugs in the car. Dean testified that he had no idea there were drugs in the Subaru. Both Officer Campbell and Dean testified that after the initial interview Officer Campbell told Dean he could leave.
 
 
 7
 Officer Campbell testified that as Dean was leaving the police car he asked, "What's going to happen next?" Campbell testified that he responded, "I'm going to check the baggies for fingerprints. If yours are on the baggies, then I'm going to get a warrant for you." At trial, Dean claimed he left at that point and never came back. Officer Campbell testified that Dean left and headed back to the Subaru.
 
 
 8
 Officer Campbell testified that as he and the other officer riding with him, John Baber, were getting ready to leave the scene, Dean came back to the car and asked to speak with Campbell in private. Campbell testified that he and Dean walked behind the car to talk. Officer Baber also testified that Dean came back to the car, asked Campbell if he could speak to him in private, and walked behind the car with Campbell. Officer Campbell testified that Dean then told him, "It's not really my drugs, man. It belongs to somebody else. I'm just a currier [sic] delivering it for somebody else." Dean denied making the statement. Campbell testified that Dean then told him he would be in touch. Officer Campbell said he did not arrest Dean at that point because he thought Dean might provide information about others involved in narcotics. Dean never contacted Campbell again. Dean was indicted and arrested two months later at the end of February 1991.
 
 
 9
 On April 18, 1991, after Dean failed to secure private counsel[2], trial counsel was appointed for him. Trial counsel filed a motion for fingerprint testing of the plastic bags. No fingerprints of Dean were found on the bags. Trial counsel spent 8.7 out-of-court hours on the case.
 
 
 10
 On the morning of trial, after the jury was selected and seated, the district court received a letter from Dean stating that he wanted new counsel. The letter was postmarked from the local jail the day before. Dean represented that the letter had been written one or two weeks earlier and that he did not realize it was just received. In the letter, Dean claimed that trial counsel did not have his best interests at heart. In response, trial counsel gave an explanation of his trial preparation. He also explained that his relationship with his client was heated at times but that this was not unusual. The district court refused Dean's request based upon Dean's previous failure to obtain counsel that delayed the case, the untimeliness of the request, the absence of a breakdown in communication between trial counsel and Dean, and trial counsel's wide experience in federal criminal trials. The trial then went forward and Dean was convicted.
 
 II.
 
 11
 Dean first contends that the separation of the passengers for individual questioning in separate police cars that resulted in his "currier" statement exceeded in both scope and duration what is permissible under Terry v. Ohio, 392 U.S. 1 (1968) and its progeny.[3] This argument fails.
 
 
 12
 First, the scope and duration of the stop did not exceed the limits set forth by Terry and its progeny. Dean relies principally upon Dunaway v. New York, 442 U.S. 200 (1979), and United States v. Rusher, 966 F.2d 868 (4th Cir.1992). The Court in Dunaway stated that "investigative stops usually consumed less than a minute and involved 'a brief question or two.' " 442 U.S. at 210-11 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 880 (1975)). We stated in Rusher that "the scope of the of the detention must be carefully tailored to its underlying justification." 966 F.2d at 875 (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)).
 
 
 13
 We note, however, that inquiries during investigative stops need not always be limited to one or two questions, provided the questions asked are "reasonably related in scope to the justification for their initiation." Brignoni-Ponce, 442 U.S. at 881 (quoting Terry, 392 U.S. at 29). Thus, police making a routine investigative stop may ask the suspects "to explain suspicious circumstances." Brignoni-Ponce, 442 U.S. at 882; Dunaway, 442 U.S. at 212. Nor must investigative stops always be terminated within a couple of minutes. "If the purpose underlying a Terry stop--investigating possible criminal activity--is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in Terry and Adams." Michigan v. Summers, 452 U.S. 692, 700 n. 12 (1981).
 
 
 14
 Here, the questions asked of Dean were reasonably related in scope to the justification for the stop. The Subaru was stopped based on a narcotics tip regarding Dean. After Campbell saw the initial bag of drugs in plain view while removing the passenger from the back seat and the subsequent discovery of other drugs in the Subaru, Dean was questioned about the drugs. The questioning of Dean focused on who possessed the drugs found in the Subaru. Dean claimed he had nothing to do with the drugs. He was then told at least twice that he was not under arrest and was free to leave. This questioning does not exceed the scope and duration allowed a Terry stop. See United States v. Crittendon, 883 F.2d 326 (4th Cir.1989) (use of handcuffs during Terry stop permissible); United States v. Perate, 719 F.2d 706 (4th Cir.1983) (fact that officers approached suspect's car with guns drawn did not exceed Terry stop); United States v. Bautista, 684 F.2d 1286 (9th Cir.1982) (separation of suspects for further questioning after initial questioning did not exceed parameters of Terry stop), cert. denied, 459 U.S. 1211 (1983).
 
 
 15
 Second, that Dean was moved from one spot of temporary detention to another does not change the investigatory nature of the stop.
 
 
 16
 The critical question is not why Dean was moved, but whether the move made the stop unconstitutionally intrusive. Officer Campbell moved Dean to the police car for further investigative questioning. Relocation for such a purpose is permissible. See Florida v. Royer, 460 U.S. at 505 (plurality opinion) (noting that relocation for extended conversation would be permissible); Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977) (relocation for security and safety permissible); United States v. Vanichromanee, 742 F.2d 340, 344-45 (7th Cir.1984) (relocation from parking garage to suspect's apartment for further questioning permissible); United States v. Hernandez, --- F.Supp. ----, 1994 WL 733782, at * 6-8 (D. Del. Dec. 20, 1994) (questioning suspect in police car after traffic stop did not exceed scope of Terry stop); United States v. Van Lewis, 409 F.Supp. 535, 545 (E.D.Mich.1976) ("That persons detained temporarily are asked to move to a quieter place for further questions does not change the character of the detention from investigation into formal arrest."), aff'd, 556 F.2d 385 (6th Cir.1977).
 
 
 17
 Finally, even if Officer Campbell's questioning of Dean had exceeded the scope or duration of a Terry stop, Dean's confession was voluntary and given after he had been advised that he was free to leave. It is clear that if Dean made the "currier" statement (which he denies), he made it after he had been informed that he was free to leave and not under arrest. It is also clear that he made the statement after he had left the police car and headed back toward the Subaru. Likewise, if he made the statement, he made it after he reinitiated the conversation without Officer Campbell's prompting. These facts demonstrate that Dean's statement was a voluntary act of free will and not the "fruit of a poisonous tree."
 
 III.
 
 18
 Dean next contends that the evidence at trial was insufficient to convict him. He argues that the "currier" statement did not link him to any or all of the drugs recovered from the Subaru. He claims that there is no way to accurately know what knowledge he had of the drugs and what drugs he was referring to when he made the statement. He also questions whether Officer Campbell's uncorroborated testimony regarding the "currier" statement alone should be enough to convict Dean. This argument is without merit.
 
 
 19
 We review the evidence and all reasonable inferences arising from it in the light most favorable to the government, United States v. Laughman, 618 F.2d 1067, 1076 (4th Cir.) (citing Glasser v. United States, 315 U.S. 60 (1942)), cert. denied, 447 U.S. 925 (1980), to determine whether a factfinder could have inferred, beyond a reasonable doubt, that the crime was committed. United States v. Anderson, 611 F.2d 504, 508 (4th Cir.1979).
 
 
 20
 To sustain the conviction, the government must show: (1) knowing and intentional possession of a controlled substance; (2) with the intent to distribute the substance. United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir.1993), cert. denied, 114 S.Ct. 2142 (1994). Actual possession of the drug is not required; constructive possession, which occurs when the defendant "exercises, or has the power to exercise, dominion and control over the item," is sufficient. Laughman, 618 F.2d at 1077. Knowledge of the presence of the controlled substance is essential to an assertion of constructive possession. United States v. Schocket, 753 F.2d 336, 340 (4th Cir.1985). Intent to distribute a controlled substance may be inferred by a jury from the quantity of drugs found in the defendant's possession. United States v. Roberts, 881 F.2d 95, 99 (4th Cir.1989).
 
 
 21
 Reviewing the facts in the light most favorable to the government, the evidence was sufficient to support Dean's conviction. First, there was sufficient evidence to establish Dean's possession of the crack cocaine. Most significantly, in his "currier" statement to Officer Campbell, Dean admitted he was the courier for the drugs in the car. Other facts, however, also support the possession element. As Officer Campbell stopped the Subaru, Dean bent over his seat. The 6.7 grams of crack cocaine were recovered from the car within a few minutes. Furthermore, Officer Campbell field tested some crack cocaine in or near the presence of Dean before Dean made his "currier" statement. Second, there was sufficient evidence to establish Dean's intent to distribute. The jury heard testimony that the 6.7 grams of crack found in the Subaru is "more than what a normal person would keep for his own personal use." A jury can reasonably infer intent to distribute from this testimony. See United States v. Bell, 954 F.2d 232 (4th Cir.1992) (holding that over 13 grams of crack found in car in which defendant was arrested was "large amount" supporting the jury's inference that an intent to distribute existed), cert. denied, 114 S.Ct. 112 (1993); Roberts, 881 F.2d at 99. Accordingly, the evidence was sufficient to support Dean's conviction.[4]
 
 IV.
 
 22
 Dean also contends that his conviction should be reversed because the district court did not thoroughly explore Dean's complaints regarding his trial counsel and did not have a factual foundation upon which to base its decision not to appoint counsel. A district court's decision whether to grant a motion for substitution of counsel will not be disturbed absent abuse of discretion. United States v. Gallop, 838 F.2d 105, 109 (4th Cir.), cert. denied, 487 U.S. 1211 (1988). This court considers three factors in deciding whether the district court exceeded its discretion: "(1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the defendant's complaint; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." United States v. Hanley, 974 F.2d 14, 17 (4th Cir.1992) (citing Gallop, 838 F.2d at 108)).
 
 
 23
 We find no abuse of discretion in this case. Although Dean claimed he had sent his letter requesting new trial counsel a week or two before trial, the letter was postmarked from the local jail the day before trial and was received after the jury was seated. The trial court did not err in finding the motion untimely. See Gallop, 838 F.2d at 108 (motion made five days prior to trial); United States v. Mastroianni, 749 F.2d 900 (1st Cir.1984) (motion made four days prior to trial). Dean argues that the district court's inquiry into the basis of his complaint was inadequate. However, in response to Dean's motion, Dean's counsel gave an explanation of his work and his relationship with Dean prior to trial before the judge denied the motion. When given an opportunity to make a statement, Dean simply said that he was dissatisfied with counsel. We find that the district court's inquiry into Dean's complaint was adequate. Finally, based on counsel's explanation of his relationship with Dean, any conflict between client and attorney was not so severe that it would cause an inadequate defense. In denying the motion, the district court based its decision upon Dean's previous failure to obtain counsel that delayed the case, the untimeliness of the request, and the absence of a breakdown in communication between trial counsel and Dean. Thus, the court did not exceed its discretion by denying the motion for appointment of substitute counsel.
 
 V.
 
 24
 Finally, Dean contends that trial counsel rendered constitutionally ineffective assistance, citing counsel's failure to file certain pretrial motions, particularly one to suppress Dean's statement to Officer Campbell. Normally, a claim based upon ineffective assistance of counsel should be raised in a motion under 28 U.S.C. Sec. 2255. In a Sec. 2255 proceeding, a petitioner can establish a full record and counsel has the opportunity to explain the reasons for his action or inaction. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir.1991), cert. denied, 112 S.Ct. 1703 (1992). We will review ineffective assistance claims on direct appeal in exceptional circumstances in which it conclusively appears on the record that a defendant was denied effective assistance. United States v. Fisher, 477 F.2d 300, 302 (4th Cir.1973); United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir.1970). This case, however, does not present such exceptional circumstances. Accordingly, we decline to address Dean's claim of ineffective assistance of counsel.
 
 
 25
 The judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Laboratory tests later confirmed that the rock-like substance was 6.7 grams of crack cocaine. Officer Campbell testified that this amount is "more than what a normal person would keep for his own personal use."
 
 
 [2]
 Dean had indicated that he was going to retain private counsel
 
 
 [3]
 Dean admits that the issue of the justification for the stop is not before the court and that we can assume that the narcotics tip regarding Dean and the vehicle he would be in supplies the requisite "reasonable suspicion" to justify a Terry stop
 
 
 [4]
 As to Dean's argument concerning the credibility of Officer Campbell, we have stated that "[w]here there are conflicts in testimony, it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982) (citing United States v. Fisher, 484 F.2d 868, 869-70 (4th Cir.1973))